## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| **STEVEN J. ROUSE and**<br>**JULIE HOBBS,** | **CIVIL ACTION NO. 5:14-cv-331-KKC** |
| **Plaintiffs,** | |
| **v.** | **OPINION AND ORDER** |
| **KIM FARMER and**<br>**COMMUNITY VENTURES**<br>**CORPORATION,** | |
| **Defendants.** | |

* * * * * * * *

This matter is before the Court on the motion to dismiss (DE 3) filed by the defendants. For the following reasons, the motion will be granted as to the plaintiffs' federal claims and the state law claims will be remanded to state court.

I.

The plaintiffs allege that over the course of several weeks in June and July of 2013, they worked with defendant Community Ventures Corporation to obtain a loan to purchase their first home. (DE 1-1, Complaint at 2.) They allege that they took an online video training course offered by Community Ventures that was designed to educate individuals about purchasing a home. (DE 1-1, Complaint at 2.) They then met with Kim Farmer, a senior mortgage loan officer for Community Ventures, on June 12, 2013 and July 11, 2013 and had discussions with her "about how the mortgage loan process worked." (DE 1-1, Complaint at 3.)

No party has made clear to the Court precisely what Community Ventures is or does. The Court gathers from the pleadings that it assists individuals in obtaining loans for the purchase of a home. It appears that, at times, Community Ventures actually loans money itself. In the case of the plaintiffs, however, the plaintiffs state that Community Ventures represented that their loan

was "ultimately to come from a bank in Tennessee called Franklin American Mortgage." (DE 6, Response at 4.)

The plaintiffs allege that Farmer represented to them that, when Community Ventures "locked in" a particular interest rate for the plaintiffs, "that rate was guaranteed to the [plaintiffs] for a period of 30 days." (DE 1-1, Complaint at 4.) The plaintiffs allege that, at the meeting on July 11, 2013, Farmer agreed to lock in the plaintiffs' mortgage rate for 30 days at 4.75 percent. (DE 1-1, Complaint at 4.) The plaintiffs allege that that, at the same meeting, Farmer gave them a document titled "Closing Cost Worksheet" that set forth the 4.75 percent interest rate and represented that the plaintiffs would get $1342.08 in cash at the closing. (DE 1-1, Complaint at 4-5.)

The plaintiffs allege that Farmer called them later that same day to state that the plaintiffs' interest rate would actually be higher than the 4.75 percent rate in the closing cost worksheet. (DE 1-1, Complaint at 6.) Thus, the plaintiffs were under the false impression for a matter of hours that they would be able to obtain a home loan at 4.75%. This is the basis for the claims as set forth in their Complaint.

The plaintiffs assert that Community Ventures violated the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.* and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.* The plaintiffs assert state law claims against Community Ventures for fraud, breach of contract, and tortious interference with a contract and with a business advantage. They also assert that Community Ventures violated the Kentucky Consumer Protection Act, KRS § 367.170(1).

The defendants move to dismiss all claims against them. Alternatively, the defendants move to require the plaintiffs to make a more definite statement of their claims. The plaintiffs recognize deficiencies in their complaint and request that their response to the motion to dismiss

2

be treated as the more definite statement. Accordingly, in ruling on the motion to dismiss, the Court will consider the allegations in the plaintiffs' response.

II.

Community Ventures asserts that the plaintiffs' TILA claim must be dismissed because the act permits a private right of action only against "creditors" and Community Ventures is not one. 15 U.S.C. § 1640(a). A creditor is defined as a person who "both 1) regularly extends . . . consumer credit. . ." and 2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g).

The parties dispute whether Community Ventures regularly extends consumer credit and the Court cannot resolve that issue on a motion to dismiss. As to the second requirement, however, the plaintiffs do not allege in their complaint that they owe any debt payable to Community Ventures or that they would have owed Community Ventures any debt under the proposed transaction. In their response, they assert only "on information and belief" that Community Ventures would have been the entity to whom their debt would have been initially payable. (DE 6, Response at 3.) But later in their response, the plaintiffs state that their proposed loan was to come from "a bank in Tennessee called Franklin American Mortgage." (DE 6, Response at 4.) In fact, the entire basis for the plaintiffs' RESPA claim, as finally explained in their response to the motion to dismiss, is that Community Ventures urged the plaintiffs to borrow from Franklin American and no other entity. (DE 6, Response at 4.)

Because the plaintiffs have not sufficiently alleged that Community Ventures is a creditor as that term is defined under TILA, the TILA claim must be dismissed.

Moreover, even if Community Ventures were a creditor, the plaintiffs have failed to state a TILA claim against it. TILA was enacted "to assure a meaningful disclosure of credit terms so that

3

the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The act requires creditors to make "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, (1998). If the creditor fails to do so, it can be held liable for criminal penalties and statutory and actual damages. 15 U.S.C. §§ 1611, 1640(a); *Beach*, 523 U.S. at 412. The disclosures must be made "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a).

Neither in their complaint nor in their response do the plaintiffs explain precisely how Community Ventures violated TILA. The Court has surmised from the pleadings that the alleged TILA violation consists of the inaccurate interest rate set forth in the closing cost worksheet that Farmer gave them. This is because the essence of the plaintiffs' complaint is that Farmer quoted them the 4.75 percent interest rate and then told them a few hours later that rate was not available. Further, TILA applies to written disclosures. *Ford v. American Home Mortg. Corp*, No. 2:10-CV-53, 2012 WL 2120724, at *3 (E.D. Tenn. 2012); *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 882 (N.D. Cal. 2011); *Kajitani v. Downey Sav.* & *Loan Ass'n*, 647 F. Supp. 2d 1208, 1220 (D. Haw. 2008); *Nieskens v. Peter*, No. 09-2085, 2010 WL 1626902, at *3 (D. Minn. 2010).

The only writing containing the quoted interest rate is the document referenced by the plaintiffs in their complaint and response called the "Closing Cost Worksheet." Thus, the Court assumes that the plaintiffs allege that Community Ventures violated TILA by putting an inaccurate interest rate in the worksheet.

4

The worksheet makes clear, however, that the quoted interest rate is not a binding one, but is instead only an estimate. The worksheet explicitly states:

*Interest rates and programs are subject to change without notice.*

(DE 3-3, Closing Cost Worksheet) (emphasis added).

The plaintiffs assert that this language is somehow ambiguous. They argue that the language refers to interest rates in general but not to the particular interest rate set forth in the closing cost worksheet. The only reasonable interpretation of the statement is that the statement applies to the interest rate set forth in the document, even if the statement also applies to interest rates generally.

In fact, the document makes clear that no figure contained in it is binding, stating:

This document is for informational purposes. It does not constitute a commitment or offer to lend. Your settlement charges may change depending on what product you are approved for, on what terms and when you are approved and/or close your loan.

(DE 3-3, Closing Cost Worksheet.)

The document further explains:

Although this statement provides information regarding estimated closing cost, it is not a Good Faith Estimate Disclosure that is required by the federal Real Estate Settlement and Procedure Act. If you apply for a loan with Community Ventures Corporation, you will receive a Good Faith Estimate.

(DE 3-3, Closing Cost Worksheet.)

Thus, the closing cost worksheet can only be read to provide an estimate of the details regarding the plaintiffs' proposed loan, including the applicable interest rate. It did not purport to set forth a binding interest rate. Accordingly, there can be no claim based on alleged inaccuracies in the document and the plaintiffs' TILA claim must be dismissed.

5

As to the plaintiffs' RESPA claim, the plaintiffs also fail to state in their complaint precisely how Community Ventures violated this statute. As Community Ventures points out, RESPA creates a private right of action for three kinds of acts:

(1) payment of a kickback and unearned fees for real estate settlement services, 12 U.S.C. § 2607(a), (b);

(2) requiring a buyer to use a title insurer selected by the seller, 12 U.S.C. § 2608(b); and

(3) the failure by a loan servicer to give proper notice of a transfer of servicing rights or to respond to a qualified written request for information about a loan, 12 U.S.C. § 2605(f).

*Washington v. National City Mortg. Co.*, No. 10-5042, 2011 WL 1842836, at * 7 (N.D. Cal. 2011).

The plaintiffs' complaint focuses solely on Farmer's representations regarding the interest rate. It makes no allegations that could plausibly support a RESPA claim and Community Ventures moved to dismiss the claim on that basis.

In their response, the plaintiffs state "[o]n information and belief, Ms. Farmer and [Community Ventures] had some form of impermissible compensation arrangement between them that related to loans that Defendants arranged for homebuyers." (DE 6, Response at 4.) They assert that "[o]n information and belief, a relationship existed between Franklin American and Ms. Farmer or [Community Ventures] that is prohibited by RESPA because of the way in which commission fees are flowing or the circumstances under which commissions for [Community Ventures] are being collected from Franklin." (DE 6, Response at 4.) They state also that "Defendant's conduct towards Plaintiffs violated fiduciary and/or confidentiality duties owed to Plaintiffs . . . in ways that plausibly implicate[s] RESPA violations as well."

The plaintiffs provide no basis for their belief that there was "some form of impermissible compensation arrangement" between Franklin American and Farmer or Community Ventures.

6

Nor do they explain how Community Ventures violated fiduciary or confidentiality duties. In order to survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" and to nudge his claim "across the line from conceivable to plausible." *Id*. at 570. The plaintiffs do not meet that burden on their RESPA claim.

For these reasons, the plaintiffs' TILA and RESPA claims must be dismissed.

Having dismissed the federal actions, the Court will exercise its discretion under 28 U.S.C. § 1367(c) to remand the state law claims to state court. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Novak v. MetroHealth Medical Center*, 503 F.3d 572, 583 (6th Cir. 2007) (quoting *Musson Theatrical v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir.1996)). A TILA claim focuses on whether a creditor made the proper disclosures to a debtor. The plaintiffs' RESPA claim focuses on Community Ventures' alleged involvement in a kickback scheme. Their state-law claims raise different issues. Further, this matter is before this Court on a motion to dismiss. No discovery has commenced in this action and the Court has made no other substantive ruling in in this case.  For these reasons, the Court will remand the plaintiffs' state law claims to the state court where they were originally filed.

III.

For all these reasons, the Court hereby ORDERS that the defendants' motion to dismiss (DE 3) is GRANTED in part and DENIED in part as follows:

1) the motion is GRANTED as to the plaintiffs' TILA and RESPA claims and those claims are hereby DISMISSED;

2) the motion is DENIED as to the plaintiffs' state law claims and those claims are hereby REMANDED to the Fayette Circuit Court.

Dated March 12, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

8